IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LYNELL H. MCCLINTON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 3:06CV133–HEH |
| | ) |
| COUNTY OF CHESTERFIELD, | ) |
| | ) |
|    Defendant. | ) |

**MEMORANDUM OPINION**
**(Granting Defendant's Motion for Summary Judgment)**

This matter is before the Court on Defendant County of Chesterfield's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties have filed memoranda of law in support of their respective positions. No material facts appear to be genuinely in dispute. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated below, the Court will grant Defendant's motion.

**I. Background**

Plaintiff Lynell H. McClinton is a female African American who is employed as the Chief of Administrative Services for the County of Chesterfield's Department of Parks and Recreation. Plaintiff brought this action against the County of Chesterfield ("Defendant" or "County") under the Equal Pay Act, Title VII of the Civil Rights Act of

1964, and 42 U.S.C. § 1981, claiming that Defendant is discriminating against her by paying her less than comparable managers who are of a different race and gender. McClinton seeks injunctive relief, damages, including back pay and benefits, compensatory damages, liquidated damages, pre-judgment interest, costs and attorneys' fees, and such other relief that is found to be just and proper.  Defendant filed the present Motion for Summary Judgment on December 15, 2006, arguing that there is no genuine issue as to any material fact and that Plaintiff's Amended Complaint should be dismissed as a matter of law.

McClinton began working for the County of Chesterfield in August 1993.  She was initially hired to be an Accounting Technician in the Utilities Department, but by January 11, 1999, Plaintiff had advanced to the position of the Chief of Administrative Services for the Department of Parks and Recreation.[1]

The County's compensation plan is used for County and County School Board employees.  (*See* Zaremba Aff. ¶ 3.)  Positions are placed within particular titles and in one of fifteen pay grades.  (Zaremba Aff. ¶ 4.)  Positions within the County can be "reclassified" when there are significant changes in job duties, or "regraded" when the market demands a change.  (Zaremba Aff. ¶ 6–7.)  Salaries can also be increased by way of a merit increase based on performance, promotion, or by special salary adjustment. (Zaremba Aff. ¶ 9.)  The County also authorized salary compressions in 1999, 2000, and

---

[1] Plaintiff notes that her working title is "Chief of Finance."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. 2 n.1.)

2004, which provided additional salary increases based upon the length of service with the County. (Mot. for Summ. J. 6.)

Two years after her promotion to Chief of Administrative Services, McClinton informally requested a reclassification of her position, which was denied by the Human Resource Management ("HRM") department. It was during this time that McClinton spoke to Scott Zaremba, the County's Assistant Director of HRM for Compensation and Benefits. McClinton alleges that during this conversation, Zaremba was not supportive of this request for a reclassification and now contends that his lack of support is evidence of discrimination against her.

On February 12, 2004, McClinton formally sought to have her position reclassified to a higher grade. The request was denied because the County's Senior Compensation Analyst in HRM, Candace Lackey, concluded that the position was properly classified based on the required duties and skills. This decision was approved by HRM Director Karla Gerner. To enhance Plaintiff's promotion potential, her supervisor then attempted to increase her job duties to the extent that a reclassification might have been possible and offered her a five percent salary increase. Plaintiff refused the salary increase.

Plaintiff's claim of discriminatory treatment is based on a comparative analysis of her position with that of several other white males, namely Clay Bowles, Chief of Administrative Services for the Sheriff's Department, and Stuart Connock, the Chief of

Parks in the Parks and Recreation Department.² The disparity in compensation, however, appears to be justified by adequate race and gender neutral reasoning.

Plaintiff maintains that as Chief of Administrative Services, her duties include development and monitoring of the department's budget, overseeing all financial and statistical functions, responsibility for all computer operations, assisting with administration support functions, developing and analyzing departmental surveys, and acting as the department's fiscal agent and department liaison. Defendant employs eight people, including Plaintiff, who have the title of Chief of Administrative Services. According to the County's classification system, all of these positions are at the grade level of 40 with a salary range between $47,002 and $80,261. In the 2006 Fiscal Year, the salaries earned by those in the positions of Chief of Administrative Services ranged from $54,917 to $69,208. Plaintiff earned $55,724, which was second to the lowest amount earned by a Chief of Administrative Services.

Plaintiff filed a Charge of Employment Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2004, and was issued a Right to Sue Notice on or about November 23, 2005. McClinton then filed the present

---

²Plaintiff appears to generally compare herself to other Chiefs of Administrative Services and with other Chiefs of Parks positions, (*See* Pl.'s Dep. 78:12–19, 81:17–24; Pl.'s Opp'n. 3–4; Amended Compl. ¶¶ 10–13) but provides no specific facts with respect to anyone except Stuart Connock and Clay Bowles. Plaintiff bears the burden of making a prima facie case with respect to comparable employees under the EPA. Therefore, based on the lack of evidence presented by Plaintiff and based upon Defendant's evidence that is not rebutted, the Court finds that the other employees generally mentioned are not legal comparators to Plaintiff.

action on June 15, 2006. Plaintiff claims she is being paid less than comparable employees because of her gender and race in violation of the Equal Pay Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. Defendant argues that the pay disparities are a result of the County's compensation system, which is largely based on seniority and merit, and also upon other non-discriminatory factors.

## II.  Standard of Review

Rule 56 provides that judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, and this party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (alteration in original) (internal quotations omitted).  The nonmoving party may not rest upon "mere allegations or denials," but instead "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. Analysis

### A. Equal Pay Act

The Equal Pay Act ("EPA") provides,

> "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex..."

29 U.S.C. § 206(d)(1). Plaintiff has the burden of establishing a prima facie case under the EPA. *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Id*. "The comparison must be made 'factor by factor with the male comparator.'" *Strag v. Bd. of Trustees*, 55 F.3d 943, 948 (4th Cir. 1995) (quoting *Houck v. Va. Polytechnic Inst.*, 10 F.3d 204, 206 (4th Cir. 1993). The Act, however, provides four exceptions in which pay differentials between employees of different sexes would be permitted if proved by the defendant by a preponderance of the evidence: (1) a seniority system, (2) a merit system, (3) a system that measures earnings by quantity or quality of production, or (4) a differential based on

6

any factor other than sex. *Strag*, 55 F.3d at 948. "If this burden is successfully carried by the employer, the plaintiff's claim must fail unless the plaintiff can satisfactorily rebut the defendant's evidence." *Id*.

Plaintiff compares her position with Clay Bowles, Chief of Administrative Services for the Sheriff's Office, and Stuart Connock, Chief of Parks for the Department of Parks and Recreation. (Pl.'s Opp'n. 1.) "In enacting the EPA, Congress chose the word 'equal' over the word 'comparable' in order 'to show that the jobs involved should be virtually identical, that is . . . very much alike or closely related to each other.'" *Wheatley v. Wicomico County*, 390 F.3d 328, 332 (4th Cir. 2004) (quoting *Corning*, 417 U.S. at 195).

While McClinton is correct in her assertion that her responsibilities and those of Connock contain similar components of office and staff supervision, budget preparation and reporting, it can hardly be said that Connock's job is a proper comparator for Plaintiff. It is undisputed that Connock is a certified landscape architect and that part of his job requires knowledge of construction methods, engineering, landscape design principles, planning principles, regulations, and ordinances. (Mot. for Summ. J. 9.)

In contrast, McClinton's position requires knowledge of accounting, accounts payable, budgeting, organizational skills, communication and interpersonal skills, and total quality improvement initiatives, budget preparation and monitoring, office administration and staff supervision, computer hardware and software support, and

automation planning.  (Mot. For Summ. J. 4.)  Although Plaintiff's position requires considerable background and training, it clearly does not entail the technical expertise necessary to perform Connock's duties.  As a matter of law, the Court finds that Connock's position as Chief of Parks is not a proper comparator for McClinton's position as Chief of Administrative Services.  Plaintiff has failed to establish a prima facie case that the two jobs are of equal skill, effort, or responsibility.  "Jobs are considered unequal – despite having the same general core responsibilities - 'if the more highly paid job involves additional tasks which (1) require extra effort ... (2) consume a significant amount of the time ...and (3) are of an economic value commensurate with the pay differential.'"  *Wheatley*, 390 F.3d at 333 (quoting *Hodgson v. Fairmont Supply Co.*, 454 F.2d 490, 493 (4th Cir. 1972)).  Connock's additional qualifications and tasks required by his position satisfy this standard.

   Plaintiff also compares herself to another Chief of Administrative Services, Clay Bowles, who holds a similarly titled position with the Sheriff's Office.  The Fourth Circuit has stated, "merely possessing the same title . . .was not enough to satisfy the EPA requirement of 'equal skills.'" *Wheatley*, 390 F.3d at 333 (citing *Soble v. Univ. of Md.*, 778 F.2d 164, 167 (4th Cir. 1985) (holding that two persons with the title of "assistant professor" in two different departments were not comparable under the EPA because the skills required in other departments were "highly specialized and required distinct skills")).

8

The County concedes that Bowles is a proper comparator, and that viewed in a light most favorable to Plaintiff, she has arguably made a prima facie case under the EPA. The Court will therefore turn to whether the County has a defensible justification for the pay disparity.

It is not disputed by either party that Bowles has been working for the County for a shorter period of time than McClinton, but that he is paid a higher salary. Bowles, however, would have a lower salary than McClinton were it not for a special salary adjustment that became effective in January 2002. (Zaremba Aff. ¶ 17.) The special salary adjustment was recommended by the Sheriff and approved by Human Resources because the salary requested was consistent with those of Bowles' peers within the Sheriff's Office and "reflect salaries that are reasonable, considering their rank and job responsibilities." (Opp'n. 5.) (citing 12/3/01 memo from Sheriff Clarence G. Williams, Jr. to Karla Gerner, Director Human Resources Management).) The Sheriff sought the increase in salary for Bowles because he believed the position was equal to that of a Captain in his office. (Opp'n. 6.) (citing 12/3/01 memo).) Without the pay adjustment, Bowles compensation would be significantly less than comparable employees in the Sheriff's Office. Although the Sheriff's office is included in the County's pay plan, it is a constitutional office independent of the County government. The rationale for Bowles' pay adjustment appears to be undisputed.

Plaintiff then argues generally that lower managers within the Department of Parks

9

and Recreation have received regrades and salary adjustments, but that "no such special salary adjustment has been given to McClinton." (Opp'n. 6.) She provides few particulars to support this contention.

McClinton offers no compelling evidence to rebut the County's justification for the pay disparity between her and Bowles, which appears to fall within the fourth category of exceptions to the EPA. Plaintiff advances no facts to the contrary. Therefore, as a matter of law, the Court finds that the County has shown by a preponderance of the evidence that the pay differential between Plaintiff and Bowles was based on a factor other than sex, which is a recognized exception to the EPA. With regard to any pay adjustments within the Parks and Recreation Department, Plaintiff has not established that those employees are proper comparators, nor has she offered any evidence to support why their pay raises amount to an EPA violation.

## B. Title VII and 42 U.S.C. § 1981

Title VII provides that "it shall be an unlawful employment practice for an employer (1) . . . to discriminate against any individual with respect to his compensation . . . because of such individual's . . . race . . .[or] sex. . . ." 42 U.S.C. § 2000e-2(a). Under Title VII, McClinton carries the burden of establishing a prima facie case by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1972). The elements of a prima facie case under Title VII and 42 U.S.C. § 1981 are the same. *Gairola v. Commonwealth of Va.*, 753 F.2d 1281, 1285–86 (4th Cir. 1985). Proof

of a connection between plaintiff's gender and an alleged adverse employment decision is typically sufficient to show a prima facie case. *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 343 (4th Cir. 1994). "The plaintiff can establish the prima facie case by demonstrating that she is female, ie., a member of a protected class, and that the job she occupied was similar to higher paying jobs by males." *Id*. Once a prima facie case is made, Defendant then has the burden to show there is a legitimate, nondiscriminatory reason for the "apparent discrimination." *Id*. After this, the burden shifts back to the plaintiff to show "that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent." *Id*. at 344.

Plaintiff has failed to establish any connection between her status as a female African American and the denial of her reclassification request or compensation as compared with other County employees. After a thorough review of the record, there is no evidence from which a trier of fact could infer discriminatory intent on the part of the County. There are no statistics, patterns, or specific acts of discrimination that Plaintiff can identify to support her claims. *Brinkley-Obu*, 36 F.3d at 345 (citing *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1135 (5th Cir. 1983)). In essence, her arguments distill to the fact that she believes she deserves a raise – and didn't get one.

Although Plaintiff is clearly a female and a member of a protected class, she has still not established that she is similarly situated to other employees in the positions of Chiefs of Administrative Services and Chiefs of Parks. As the Fourth Circuit noted in

*Wheatley v. Wicomico County*, which is particularly pertinent to Plaintiff's comparison with the Chiefs of Parks positions, a policy decision could control the determination that the heads of two different departments should have the same pay. 390 F.3d 328, 335 (4th Cir. 2004). "But to say that Title VII requires such an outcome is a different matter altogether. The county contended throughout that any pay differentials reflected nothing more than the fact that employees were performing different jobs. The evidence provides no basis for concluding that this explanation serves as a pretext for the practice of intentional sex discrimination." *Id.*

With regard to the Chiefs of Administrative Services, the County has shown that others in the position have worked for the County for a longer period than Plaintiff, justifying a higher salary. With respect to Bowles, the Court has already concluded that the County has offered a sufficient non-discriminatory reason for his pay increase.

In a deposition taken on November 30, 2006, McClinton offered a 2001 phone conversation with HRM employee Scott Zaremba as evidence of discrimination. (*See* Pl.'s Dep. 69:3–4, 104:5–13.) Specifically, Plaintiff states, "I don't understand how they can, in a Department, upgrade people, upgrade managers, give them salary increases to all of the others and not see there is not equity by not giving me something. His contention is that I don't have a specialty in Parks & Recreation." (Pl.'s Dep. 104:5–13.) She goes on to state that the actual discrimination occurred because, "It's just looking at the whole scope in my opinion. He's not supportive of the fact. He wasn't seeing what I was trying

to tell him about equity." (Pl.'s Dep. 104:20–25, 105:3–5.)

Plaintiff admits in her deposition that her knowledge of the salary increases within the Parks and Recreation Department came from rumors within the office. (Pl.'s Dep. 73:12–25 to 74:4.) Furthermore, McClinton also admits that Zaremba informed her that former employees who held her position as Chief of Administrative Services, including a white male, a black female, and white female, requested reclassifications that were denied. (Pl.'s Dep. 105:6–25, 108:1–11.) Plaintiff then contends generally in her deposition that two other HRM department heads discriminated against her because she is the only female "over there," but points to no specific examples in her Complaint or any other pleadings. (Pl.'s Dep. 109:1–22.) Looking at all of these statements in the light most favorable to the Plaintiff, it is clear that they do not rise to violations of Title VII or 1981. Neither Title VII nor the Civil Rights Act were intended to address employee grievances or claims of mere inequity. These remedial statutes were enacted to combat impermissible discrimination based on gender, race, and ethnicity.

In 1998 when Plaintiff was hired as Chief of Financial Services, she was offered the job "above salary" because of her outstanding credentials. (Golden Aff. Ex. 1.) After being promoted to Chief of Administrative Services in 1999, Plaintiff received a compression increase on April 3, 1999, a merit increase on January 8, 2000, a compression increase on April 1, 2000, a merit increase on January 6, 2001, a merit increase on January 5, 2002, a merit increase on January 4, 2003, a merit increase on

13

January 3, 2004, a merit increase on January 1, 2005, and another merit increase on December 31, 2005.  (*See* Zaremba Aff. Ex. 3.)  Between the years of 1999 and 2005, McClinton's salary increased from $42,122 to $55,724.  (Zaremba Aff. Ex. 3.)  In addition, the County has contributed financial assistance toward Plaintiff's receipt of a Certificate of Public Management, Masters degree in Public Administration, and a Ph.D in Public Policy.  (Pl.'s Dep. 15:25 to 19:9.)

The Court finds that the undisputed facts in this case cannot reasonably support the claim that the salary differentials or the denial of a reclassification for the position of Chief of Administrative Services are violations of Title VII or 42 U.S.C. § 1981.

### IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this 18th day of January, 2007.
Richmond, VA